STATE v. JOSEPH BILOTTA.[1]

June 16, 1950.

No. 35,201.

*Nahurski & Cyptar,* for appellant.

*J. A. A. Burnquist,* Attorney General, *Ralph A. Stone,* Assistant Attorney General, *James F. Lynch,* County Attorney, and *William F. Desmond,* Assistant County Attorney, for the State.

MAGNEY, JUSTICE.

Defendant was found guilty of the offense of wilfully failing to support a four-year-old child. He appeals from the judgment of conviction.

M. S. A. 617.56 provides in part as follows:

"* * * and every person having legal responsibility for the care or support of a child who is under 16 years of age and unable to support himself by lawful employment, who wilfully fails to make proper provision for such child, is guilty of a misdemeanor."

Defendant is 53 years of age. He and the complaining witness were married in Italy in 1921. They came to St. Paul in 1922. Eleven children were born to them, nine of whom are still living. In 1943 defendant's wife brought suit for separation. Upon his entreaties, the action was dismissed. In the fall of 1946, the wife became ill and for a time was a patient at the St. Peter State Hospital. Prior to her illness, defendant had acquired a home,

---

[1]Reported in 43 N. W. (2d) 111.

which was fully paid for, and an equity in some other real estate. Because of the wife's illness, defendant was forced to sell the other real estate, and out of the proceeds he spent $3,000 for expenses growing out of her illness. In February 1948, he was forced to leave his home and remained away nine weeks. In October 1948, he was again forced to leave his home and has remained away since that time. The record is clear that because of the wife's attitude, undoubtedly attributable to her mental condition, it was impossible for defendant to remain at home. Until October 1948, defendant had supported his family at all times. When it became apparent that he could no longer remain at home, he went to the office of the family welfare service legal aid for suggestions and help. He showed much concern about the welfare of his family. When it became apparent to the workers in that organization that it would be impossible for defendant to support his family and also himself out of his earnings while living away from home, defendant and his problems were turned over to the Ramsey county welfare board.

The home is owned jointly by defendant and his wife. Living at home are four children of the ages of 4, 8, 12, and 13.

Since August 25, 1948, defendant has been employed by The Emporium, a department store in St. Paul. From December 15, 1948, to November 5, 1949, his "take home" pay was $1,586.91 or about $148.73 a month. Out of this, he pays $74 a month for room, board, and washing, an amount which cannot be called extravagant. He pays $6 a month for tobacco, $7.20 for transportation, and $2 for union dues, altogether a total of $89.20. Under arrangements with the welfare board, he pays $34 a month in aid of the support of his family. He pays $5.50 a month for taxes on his home, $2 a month for fire insurance premiums, and $2.05 a month premium on a life insurance policy in which his wife is the beneficiary. Thus, for his family he pays out $43.55 a month. Deducting $89.20 and $43.55 from his monthly income of $148.73 leaves a balance of $15.98. The record shows that during 1949 he paid $10 for glasses for one of the children and a $3 hospital bill for another. He has also

purchased for the children several pairs of shoes and some dresses. Once a week or oftener, he visits the family and often takes them fruit, milk, bread, and luncheon meat. It is evident that when these expenditures are taken out of the $15.98 balance, together with what he must pay out for clothing, haircuts, and other incidentals for himself, very little, if anything, is left. One of the employes of the welfare board testified that "we didn't see how we could ask him to pay more at this point."

Defendant's unfortunate financial situation, as far as the record indicates, was not created by him. When he was permitted to live at home his modest income took care of everything. In our opinion, the evidence does not support the finding of the court that defendant wilfully failed to make proper provision for his minor child.

Judgment reversed.